IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY McNAMEE,                      )
                                   )
                  Plaintiff,       )
                                   )
        v.                         )       Civil Action No. 05-1536
                                   )
COUNTY OF ALLEGHENY,               )       MAGISTRATE JUDGE HAY
a political subdivision of the     )
Commonwealth of Pennsylvania,      )
                                   )
                  Defendant.       )


OPINION and ORDER


HAY, Magistrate Judge

        Plaintiff, Mary McNamee ("plaintiff"), commenced this action against defendant,

County of Allegheny, after it terminated her employment at the John J. Kane Regional Center -

Glen Hazel ("the Center"), in July of 2005.

        The record demonstrates that plaintiff was employed at the Center, a Long Term

Care Facility, as the Director of Nursing starting in December of 2002.  Defendant's Statement of

Undisputed Facts ("SOF"), ¶¶ 1, 2 (Doc. 29).[1]  On June 17, 2005, a resident was found dead

lying face down in a bathtub full of water in a shower room on Unit 3-B.  SOF ¶ 3.  The

Department of Health was contacted shortly thereafter and conducted an investigation.  SOF ¶ 4.

The investigator, or "surveyor," noted in his report that while he initially observed that there were

no locks on any of the three shower rooms located on Unit 3-B, he later observed the

---

[1]We note here that because plaintiff does not dispute the facts as set forth by defendant
and has, in fact, cited to defendant's SOF in the Factual Background section of her brief, the
Court has relied upon the facts as stated therein as well.

maintenance staff putting pad locks on each of the three doors.  SOF ¶ 5; Survey Report, p. 6 (Doc. 27-2).  It also appears that plaintiff was interviewed during the investigation and indicated that locks had been requested for the doors on February 23, 2005, when the same resident fell in the bathroom, and again when the resident was found alone in the shower room.  SOF ¶ 6; Survey Report, p. 6.  Plaintiff's employment at the center was subsequently terminated on July 21, 2005.  SOF ¶ 1.

       Plaintiff filed the instant complaint on November 2, 2005, alleging that defendant terminated her employment in violation of her right to due process under the Fourteenth Amendment to the United States Constitution (Count I), the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et seq.* (Count II), and the First Amendment to the United States Constitution (Count III).  Defendant has now filed a motion for summary judgment arguing that all of plaintiff's claims are properly dismissed.

       Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.Civ. P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be

taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Defendant first contends that Count I of the complaint, wherein plaintiff has alleged that defendant violated her right to procedural due process when it terminated her employment without first giving her a hearing, is properly dismissed since the Fourteenth Amendment only requires notice and an opportunity to be heard when a person is deprived of a property interest. Defendant argues that a property interest in employment only arises when there is an expectation of continued employment based on some contractual obligation under state law and because plaintiff has not identified a contractual right that would have given her an expectation of continued employment she had no such property interest and, thus, was not entitled to a pre-termination hearing.

It appears undisputed that procedural due process is required only when a person is deprived of property or another substantive right. Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003). It is also undisputed that not all employees have a property interest in their jobs. Swinehart v. McAndrews, 221 F. Supp. 2d 552, 557 (E.D. Pa. 2002), aff'd, 69 Fed. Appx. 60 (3d Cir. 2003). An abstract need or desire to be employed or a "unilateral expectation"

of continued employment is insufficient to create a property interest.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Such an interest will be found, however, where "a 'legitimate claim of entitlement' to work exists."  Swinehart v. McAndrews, 221 F. Supp. 2d at 557, quoting Board of Regents of State Colleges v. Roth, 408 U.S. 577.  Although a contract of employment, either express or implied, may create such an interest, it can also be created by statute, regulation or government policy.  Id. at 557-58, citing Larsen v. Senate of Commonwealth of Pennsylvania, 154 F.3d 82, 92 (3d Cir. 1998), cert. denied, 525 U.S. 1144 (1999), and Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1256 (3d Cir. 1994).  See Board of Regents v. Roth, 408 U.S. at 577 ("Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits").  Whether or not a property interest exists is governed by state law. Swinehart v. McAndrews, 221 F. Supp. 2d at 558.

Here, relying on Keefer v. Durkos, 371 F. Supp. 2d 686 (W.D. Pa. 2005) ("Keefer"), plaintiff argues that her right to employment in this case is derived by statute -- specifically, Pennsylvania's Whistleblower Law.  Indeed, in Keefer, like here, the plaintiff brought a claim under the Fourteenth Amendment, as well as Pennsylvania's Whistleblower Law, alleging that her right to due process was violated when she was terminated without a hearing after she "blew the whistle" on a school board member for taking food from the school cafeteria for non-school activities.  Id. at 690, 693.  The defendants filed a motion to dismiss arguing, much as the instant defendant has, that because plaintiff was an at-will employee and was not employed pursuant to a contract or government action that created a property interest,

4

her employment was not protected by the Fourteenth Amendment.  Id. at 692.  The Court,

however, rejected the defendants' argument finding that the Court's analysis in Brominski v.

County of Luzerne, 289 F. Supp. 2d 591, 596 (M.D. Pa. 2003) ("Brominski"), applied and that,

under Brominski, the plaintiff had alleged sufficient facts to state a claim for a violation of her

procedural due process rights.  Id. at 693-94.   Although this Court finds Brominski to be

unhelpful, if not inapplicable to this precise issue,[2] the Keefer Court subsequently clarified its

ruling in a memorandum opinion issued pursuant to defendants' motion for summary judgment

wherein the Court was apparently asked to revisit the issue.  There, the Court stated that,

> Plaintiff, although an at-will employee, did have an expectation in
> continued employment to the extent she has protection against
> retaliation for protected conduct under the Whistleblower Law, and
> thus could be entitled to the protections of procedural due process.
> This is consistent with the *Weaver* case cited by the Plaintiff in that
> an exception exists to the general "at-will" employment law in the
> Commonwealth of Pennsylvania for purposes of "public policy."
> *Weaver [v. Harpster*, 885 A.2d 1073, 1076 (Pa. Super. 2005)].
> The Court believes that the Pennsylvania Whistleblower Law
> creates such a public policy exception to the general rule of law
> that employment contracts are "at-will" in the state of
> Pennsylvania.  To not follow the public policy of the
> Whistleblower Law would allow for an "at-will" state or local
> government employee to be terminated for the good-faith reporting
> of "wrongdoing" or "waste" within the Commonwealth's
> governmental bodies and this would clearly frustrate the intent of
> the Pennsylvania Whistleblower Law.

Keefer v. Durkos, 2006 WL 2773247 *16 (W.D. Pa. September 25, 2006).  Thus, the Court

found that because the very purpose of the Whistleblower Law is to protect employees from

---

[2]Indeed, the issue in Brominski, was whether Pennsylvania's Whistleblower Law applied to at-will employees at all and not, as here, whether the statute provides the basis for finding a property interest exists so as to invoke the protection of the Fourteenth Amendment's procedural due process clause.  Brominski, 289 F. Supp. 2d at 596.

retaliation when they report wrongdoing or waste within the Commonwealth's governmental

bodies, it follows that they can expect not to be terminated when such reports are made.  The

statute therefore creates an expectation of continued employment and, hence a property interest,

when an employee engages in protected conduct which, in turn, entitles the employee to notice

and an opportunity to be heard before being deprived of that interest.

Because the instant plaintiff has alleged that she, too, engaged in precisely the

activity that the Whistleblower Law was designed to protect, it appears that she also had an

expectation not to be terminated as a result.  Thus, to the extent that plaintiff has presented a

viable claim under the Whistleblower Law, she had a property interest in her continued

employment and was entitled to notice and an opportunity to be heard before she was deprived of

that interest.

Defendant has argued, however, that plaintiff's claim under the Whistleblower

Law should also be dismissed because even if plaintiff reported that she and/or the staff had

requested locks for the bathroom doors prior to the resident's death in June of 2005, such a report

does not constitute the type of report of "wrongdoing" contemplated under the statute.  We agree.

Under the Pennsylvania Whistleblower Law,

> No employer may discharge, threaten or otherwise discriminate or
> retaliate against an employee regarding the employee's
> compensation, terms, conditions, location or privileges of
> employment because the employee or a person acting on behalf of
> the employee makes a good faith report or is about to report,
> verbally or in writing, to the employer or appropriate authority an
> instance of wrongdoing or waste.

43 P.S. § 1423 (a).  "Wrongdoing," in turn, is defined as: "[a] violation which is not of a merely

technical or minimal nature of a Federal or State statute or regulation, of a political subdivision

ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  43 P.S. § 1422.  See Golaschevsky v. Department of Environmental Protection, 554 Pa. 157, 162, 720 A.2d 757, 759 (1998) ("'[W]rongdoing' includes . . . violations of any federal or state statute or regulation, other than violations that are 'of a merely technical or minimal nature'").

Here, citing to her complaint, plaintiff argues simply that she has adequately alleged that she was terminated in retaliation for reporting to the Department of Health that she had requested the installation of locks on the shower room doors and that because defendant's failure to install the locks jeopardized the safety of residents she has alleged "wrongdoing" within the meaning of the Whistleblower Law.  In so arguing, plaintiff cites to Podgurski v. Pennsylvania State University, 722 A.2d 730 (Pa. Super. 1998), in which the plaintiff brought a claim under the Pennsylvania Whistleblower Law alleging that her employer retaliated against her for reporting various incidents of wrongdoing including expenditures of unnecessary funds, dismissal of workers absent any reason, hiring of workers without proper qualification, false reporting of hours worked, and improper conduct by employees while at work such as babysitting children, making long-distance personal telephone calls and refusing to perform job functions. Id. at 732.  The defendants filed preliminary objections in the nature of a demurrer which the trial court sustained.  On appeal, the Superior Court reversed finding that plaintiff had alleged sufficient "wrongdoing" in her complaint to withstand a demurrer as her reported complaints "relate to the employer's duty to enforce administrative policies protecting their interest" and because "[f]urther factual details are subject to discovery."  Id.

We note at the outset that, notwithstanding the absence of any meaningful

7

discussion by the Court in Podgurski regarding the parties' arguments or what constitutes

"wrongdoing" under the statute, it appears clear that the Court's decision turned largely on the

fact that the case was merely at the preliminary objection stage of the proceedings. Indeed, the

Court relied heavily on Rodgers v. Pennsylvania Department of Corrections, 659 A.2d 63 (Pa.

Commw. 1995), wherein the Court also overruled a demurrer on nearly identical facts, finding

that, "[f]urther factual details are readily subject to discovery, and these legal issues may be

decided in the course of the litigation. This Court cannot conclude with certainty that the law

permits no recovery under the allegations pleaded." Id. at 66. The Podgurski Court then

concluded that factual details would be revealed during discovery in that case as well, suggesting

that the issue could be revisited once discovery had concluded. Podgurski, 722 A.2d at 732. In

the instant case, however, the case is long past the pleading stage and discovery has closed.

Thus, the standard employed by the Court in Podgurski to determine whether plaintiff had stated

a claim in the first instance is inapplicable here.

Plaintiff also argues that she has adequately alleged "wrongdoing" within the

meaning of the Whistleblower law because defendant's failure to lock the shower room doors

"violated several relevant statutes and regulations." Plaintiff then cites to three regulations which

set forth the requirements that a nursing facility must meet in order to participate in the Medicaid

program. See 42 C.F.R. §§ 483.25(h)(1), 483.75, 483.20(k)(1). See also 42 C.F.R.§ 483.1(b).

These regulations, however, do not impose the duty on defendant that plaintiff would have us

find and, thus, do not provide the basis for finding that plaintiff reported "wrongdoing" as

defined under the Whistleblower Law.

Indeed, the first regulation cited by plaintiff sets forth the requirements for

"Quality of Care" and provides that, "[t]he facility must ensure that -- (1) The resident

environment remains as free of accident hazards as is possible."  42 C.F.R. §§ 483.25(h)(1).  The

portion of the second regulation cited by plaintiff relates to "Administration" and generally notes

that, "[a] facility must be administered in a manner that enables it to use its resources effectively

and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial

well-being of each resident."  42 C.F.R. § 483.75.  Finally, plaintiff cites to 42 C.F.R. §

483.20(k)(1), which provides for "Resident Assessments" and, in particular, provides that, "[t]he

facility must develop a comprehensive care plan for each resident that includes measurable

objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial

needs that are identified in the comprehensive assessment."  These regulations, however, provide

only general requirements for nursing homes that wish to participate in Medicaid without any

specifications as to how those requirements are to be met.  They clearly do not impose a duty on

defendant, or a nursing facility, to have locks on shower room doors.

    In this manner, Riggio v. Burns, 711 A.2d 497 (Pa. Super. 1998), is instructive.  In

that case, the plaintiff brought a claim under Pennsylvania's Whistleblower Law after she was

allegedly terminated for objecting to the fact that the supervising surgeon permitted residents to

perform surgery on patients when he was not physically present.  To support her position that her

complaints qualified as reports of "wrongdoing" under the statute, the plaintiff, much like the

plaintiff here, argued that the procedures to which she objected placed patients' safety in

jeopardy and disregarded provisions of the Health Care Facilities Act, 35 P.S. §§ 448.101-

448.904, which sets forth minimum licensing standards for health care facilities, and the Medical

Practices Act of 1985, 65 P.S. §§ 422.1-422.45, which establishes licensing standards for

medical practitioners.  Id. at 501.  In particular, the plaintiff referred to the sections of the Health

Care Facilities Act that provided that a license shall issue to a health care provider when the

Department of Health is satisfied, inter alia, "that the health care facility provides safe and

efficient services which are adequate for the care, treatment and comfort of the patients or

residents of such facility," and that the department may refuse to renew a license or may suspend

or revoke a license due to "[i]ncompetence, negligence or misconduct in operating the health care

facility or in providing services to patients."  35 P.S. §§ 448.808(a)(3), 448.811(7).  With respect

to the Medical Practices Act, the plaintiff cited to those provisions which provide that the State

Board of Medicine may impose disciplinary or corrective measures on a medical practitioner for

"failing to conform to an ethical or quality standard of the profession," which, in turn, is defined

as "when the practitioner provides a medical service at a level beneath the accepted standard of

care," or "[a]cting in such manner as to present an immediate and clear danger to public health or

safety." 63 P.S. §§ Section 422.41(8)(ii), 422.41(9).

      The Court, however, declined to find these regulatory statutes provided the basis

for finding "wrongdoing" under the Whistleblower Law, opining that:

> The regulatory statutes cited by Appellant are entirely too general
> and vague to permit the conclusion that a violation had occurred
> amounting to "wrongdoing" under the Whistleblower Law.  Both
> the Health Care Facilities Act and the Medical Practices Act of
> 1985 provide only general requirements for the licensing of health
> care facilities and physicians.  For example, within one of the
> sections Appellant cites, it is provided that the Department of
> Health shall issue a license to a health care provider when it is
> satisfied "that the health care provider is a responsible person." 35
> P.S. § 448.808(a)(1).  Similarly, another section states that a
> physician may be subject to disciplinary measures for "[b]eing
> guilty of immoral or unprofessional conduct." 63 P.S. § 422.41(8).
> Because standards such as these are subject to interpretation, and

do not specifically define prohibited conduct, it is not at all clear when they would be violated in such a way as to amount to "wrongdoing".

\*      \*      \*

Assuming, arguendo, that Dr. Goldman's activity constituted negligent or incompetent conduct, Appellant would still not be entitled to protection under the Whistleblower Law.  Wrongdoing, as defined by the Whistleblower Law, does not encompass tort principles unless a statute, regulation, or code of conduct or ethics is violated by the tortious act or omission.  *See* 43 P.S. § 1422, *supra*.  Appellant attempts to come within the purview of the Whistleblower Law by claiming that Dr. Goldman's conduct violated the licensing statutes.  However, the licensing statutes are of no assistance to Appellant because they lack specificity as to what acts are proscribed.  The statutes merely consist of the legislature's guidelines for the regulation of the health care industry.  Each statute delegates to an independent entity the power to investigate and evaluate whether the individual in question has complied with these general standards.  They then provide that certain consequences may be imposed if the entity determines that the standards have not been met.  The statutes are utterly silent with respect to specific conduct.  Because the statutes cited by Appellant do not comment on the issue of when a surgeon must be physically present while a resident engages in surgical procedures, we cannot conclude that they have been violated in such a manner as to constitute "wrongdoing" as defined by the statute

Id. at 501-02.

Here, like in Riggio, the regulations to which plaintiff cites are too general and vague to permit the conclusion that they were violated in a manner amounting to "wrongdoing" under the Whistleblower Law.  Indeed, what steps should be taken to ensure that the residents' environment remains free of accident hazards or that the facility is administered in a manner so as to attain the highest practicable well-being of each resident, are not specifically defined.  Because the regulations are silent with respect to specific conduct that must be adhered to,

11

including when locks should be placed on shower room doors, it is unclear when they would be violated in such a way to constitute "wrongdoing" as defined under the statute.   As such, it appears that plaintiff is unable to succeed on her claim brought under the Whistleblower Law and defendant is therefore entitled to summary judgment at Count II of the Complaint.

Our finding here, of course, requires us to revisit plaintiff's due process claim bought at Count I where we found that plaintiff only had an expectation of continued employment to the extent she had a viable claim under the Whistleblower Law.  Having concluded that plaintiff did not report "wrongdoing" as contemplated under the Whistleblower Law, it follows that the statute does not serve to create a property interest in plaintiff's employment.  As such, plaintiff had no right to notice or an opportunity to be heard before being terminated and defendant is entitled to summary judgment on plaintiff's due process claim brought at Count I as well.

Finally, defendant argues that it is entitled to summary judgment on plaintiff's First Amendment retaliation claim brought at Count III of the complaint because plaintiff's statement to the state surveyor is not protected speech.

To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action.  Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  Whether or not the conduct at issue is protected in the first instance is a question of law.  Id.

A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government

> employer did not have "an adequate justification for treating the
> employee differently from any other member of the general public"
> as a result of the statement he made.

Id., quoting Garcetti v. Ceballos, ___ U.S. ___, ___, 126 S. Ct. 1951, 1958 (2006) ("Garcetti").

Further, "when public employees make statements pursuant to their official duties, the employees

are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate

their communications from employer discipline."  Garcetti, 126 S. Ct. at 1960.

Here, relying on Garcetti, defendant argues that plaintiff's statement to the

Department of Health informing it that she had previously contacted her supervisor and requested

that locks be placed on the shower room doors is not protected speech since it was made pursuant

to her duties as Director of Nursing.  We agree.

In Garcetti, the plaintiff was a "calendar" deputy district attorney who had certain

supervisory responsibilities over other lawyers in the office.  In February of 2002, the plaintiff

was contacted by a defense attorney regarding inaccuracies in an affidavit used to obtain a search

warrant in a pending case and was asked to review the matter.  Id. at 1955.  Following an

investigation, the plaintiff concluded that the affidavit did in fact contain serious

misrepresentations and confronted the affiant.  Id.  Having failed to receive a satisfactory

explanation for the inaccuracies, the plaintiff reported his findings to his supervisors and

prepared a memorandum in which he recommended that the case be dismissed.  Id. at 1955-56.

A meeting subsequently took place amongst the plaintiff, his supervisors, the affiant, and other

law enforcement personnel, following which the district attorney's office decided to proceed with

the prosecution.  Id. at 1956.  The defense attorney filed a motion challenging the warrant, and

the plaintiff was called to testify at the hearing by the defense.  Id.  Although the trial court

13

rejected the challenge to the warrant, the plaintiff was allegedly subjected to a series of retaliatory

employment actions thereafter including being reassigned to a trial deputy position, being

transferred to another courthouse, and being denied a promotion.  Id.

        The plaintiff filed suit alleging, inter alia, the he was retaliated against in violation

of his First Amendment rights for writing the memorandum recommending that the criminal case

be dismissed.  The District Court granted the defendants' motion to dismiss finding that the

memo was not protected speech.  The Court of Appeals for the Ninth Circuit reversed finding

that the memorandum was protected under the First Amendment analysis set forth in Pickering v.

Board of Education of Township High School Dist. 205, 391 U.S. 563 (1968), and Connick v.

Myers, 461 U.S. 138 (1983), addressing only whether the speech in question touched upon

matters of public concern, and without considering whether the speech was made in the

plaintiff's capacity as a citizen.  Id.  The Supreme Court of the United States then reversed the

Ninth Circuit concluding that the plaintiff's speech was not protected because he was not

speaking as a citizen when he prepared and presented his memorandum to his supervisors but

was expressing his views pursuant to his official duties.  Id. at 1959-60.  Specifically, the Court

found that the plaintiff was fulfilling his responsibilities as a prosecutor by advising his

supervisor of the progress of a pending case and that limiting an employee's speech that arises

only because of his employment responsibilities does not encroach freedoms he may enjoy as a

citizen.  Rather, the Court found that such limitation merely "reflects the exercise of employer

control over what the employer itself has commissioned or created."  Id.  Because the plaintiff

wrote the memorandum while performing the work he was paid to perform, the Court concluded

that the First Amendment did not protect him from managerial discipline in relation thereto.  Id.

at 1960.

Here, to support its position that plaintiff's statement to the Department of Health was made pursuant to her official duties and, thus, is not protected speech, defendant points to the fact that plaintiff has alleged in her complaint that during the investigation she, "in the course of her duties with Kane," informed the Department of Health that she had previously requested locks for the shower room doors.  Complaint ¶¶ 12, 13.  Defendant also points to plaintiff's deposition testimony in which she stated that she was interviewed by the Department of Health "as the Director of Nursing;" that she was familiar with the surveyor conducting the investigation because she had spoken with him before in connection with other complaints pursuant to her duties as the Director of Nursing; that part of her responsibilities as the Director of Nursing was to arrange interviews with the surveyor; and that part of her job was to cooperate in the investigation and provide the surveyor with information.  Pl.'s Dep., pp. 46, 48-49, 50-51, 53 (Doc. 27-3).  It therefore appears that reporting to the Department of Health and participating in investigations that stem from complaints of abuse and reports of other incidents such as the one at issue here are part of plaintiff's official duties and, thus, under Garcetti, her statement made pursuant to those duties does not enjoy First Amendment protection.

Notably, plaintiff has not discussed or attempted to refute her deposition testimony.  Nor has she presented any evidence which would suggest that her statement to the surveyor was not made pursuant to her official duties.  Rather, plaintiff contends only that her report to the surveyor "fell outside the course of her *primary* official duties as Director of Nursing."  Pl. Brief, p. 7 (emphasis added) (Doc. 31).  In so arguing, plaintiff not only appears to concede that she was speaking pursuant to her official duties but has also distinguished her case

from <u>Walters v. County of Maricopa, Arizona</u>, 2006 WL 2456173 (D. Ariz. August 22, 2006)

("<u>Walters</u>"), upon which she relies to support her position that her report to the Department of

Health is deserving of First Amendment protection.

   In <u>Walters</u>, the plaintiff, who was a police officer with the City of Chandler Police

Department, brought suit against the Maricopa County Attorney and the County itself alleging,

<u>inter</u> <u>alia</u>, that he was retaliated against for "bringing to light the misconduct" of an attorney who

worked for the Maricopa Attorney's Office at a meeting between representatives from the

Chandler Police Department, the City of Phoenix Police Department and the Maricopa

Attorney's Office.  The Court found that Walters' whistleblowing did "not fall within the scope

of employment duties that he was 'employed to do,'" because, as a police officer, he was

"employed to investigate and assist in the prosecution of criminal drug offenders."  <u>Id.</u> at *14.

The Court also opined that even if Walters' employment obligations could be perceived as

including whistleblowing, they could not encompass reporting misconduct to higher-ups in a

separate governmental agency who do not have employment authority over him.  <u>Id.</u>

   In the instant case, while it is true that plaintiff reported the alleged misconduct to

an outside agency, unlike in <u>Walters</u>, plaintiff's own testimony demonstrates that reporting to

that agency and cooperating with that agency's investigations is part of her job.  Although, as

argued by plaintiff, it may be that these responsibilities are different from her nursing duties, that

fact does not negate plaintiff's testimony that, as Director of Nursing, participating in

investigations conducted by the Department of Health is her responsibility as well.  Moreover,

plaintiff's statement was made during the course of an investigation into the death of a resident

on a unit that, as Director of Nursing, was presumably under her supervision.  Making reports to

the Department of Health and assisting in their investigations when such incidents occur would appear to be a task that is appropriately within the scope of the Director of Nursing's responsibilities.  See Garcetti, 126 S. Ct. at 1961-62 (Noting that the proper inquiry in defining an employee's job description "is a practical one" finding that "[f]ormal job descriptions often bear little resemblance to the duties an employee is actually expected to perform" and that "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties").  Because plaintiff has not provided a basis for concluding otherwise and her own testimony indicates that she was speaking as Director of Nursing, it appears only practical to conclude that her statement was made pursuant to her duties as Director of Nursing and, thus, is not protected under the First Amendment.  As such, defendant is entitled to summary judgment at Count III of the complaint as well.

For these reasons, the motion for summary judgment submitted on behalf of defendant Allegheny County will be granted.


Dated:  13 August, 2007.

17

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY McNAMEE,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        Civil Action No. 05-1536
                                       )
COUNTY OF ALLEGHENY,                   )        MAGISTRATE JUDGE HAY
a political subdivision of the         )
Commonwealth of Pennsylvania,          )
                                       )
                    Defendant.         )

## <u>ORDER</u>

AND NOW, this 13th day of August, 2007, upon consideration of the Motion for Summary Judgment submitted by defendant County of Allegheny, and the response in opposition thereto submitted by plaintiff Mary McNamee, IT IS HEREBY ORDERED that the motion (Doc. 27) is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of defendant County of Allegheny and against the plaintiff Mary McNamee.

By the Court,

_/s/ Amy Reynolds Hay_____
_____ United States Magistrate Judge


cc:    William M. Radcliffe, Esquire
       Radcliffe & DeHaas, L.L.P.
       2 West Main Street
       National City Bldg., Suite 700
       Uniontown, PA 15401

Michael H. Wojcik, County Solicitor
Caroline Liebenguth, Assistant County Solicitor
Allegheny County Law Department
300 Fort Pitt Commons Building
Pittsburgh, PA 15219